**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| _____ ) <br> **STRUCTURAL CONCRETE PRODUCTS, LLC,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **CLARENDON AMERICA INSURANCE COMPANY,** ) <br> ) <br> **Defendant.** ) <br> ) <br> _____ ) | **CIVIL NO. 3:07CV253** |

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court by consent of the parties on the Defendant, Clarendon

America Insurance Company's ("Clarendon"), Motion for Postponement of Suit and Motion to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket entry nos. 6 and 7).  Also

before the Court is the Plaintiff, Structural Concrete Products, L.L.C.'s ("SCP"), Motion to

Strike and Motion for Default Judgment (docket entry nos. 11 and 12).  The matter has been

briefed and the Court has entertained oral argument.  For the reasons set forth herein,

Clarendon's Motion for Postponement of Suit is GRANTED and Clarendon's Motion to Dismiss

is DENIED.  SCP's Motion to Strike is GRANTED IN PART and DENIED IN PART, and its

Motion for Default Judgment is DENIED.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

SCP is a Virginia limited liability company in the business of "manufacturing, supplying

and erecting . . . concrete components for construction projects in Virginia and elsewhere." (Compl. ¶ 2.)  In February 2000, Skanska USA Building, Inc. ("Skanska") entered into an agreement with the University of Virginia ("UVA") to construct concrete stairs and railings on the outside of the Lambeth Field student housing apartments.  (Compl. ¶ 6.)  Skanska subcontracted part of the concrete stairs work to SCP.  (Compl. ¶ 7.)  At some point after the project's completion, UVA complained that the stairs were defective and demanded that Skanska take corrective action.  Thereafter, Skanska demanded that SCP repair the damaged stairs and indicated that if SCP refused to do so, "Skanska would hold [SCP] responsible for the cost of the corrective action demanded by UVA."  (Compl. ¶ 7.)

In August 2004, SCP notified Clarendon (a Delaware corporation) of Skanska's potential claim.  (Compl. ¶ 8.)  SCP alleges that it was covered under two separate insurance policies provided by Clarendon: HML0003447 (the "First Policy"), effective from August 5, 2003 to August 5, 2004; and HML0005530 (the "Second Policy"), effective from August 5, 2004 to August 5, 2005.  (See Compl. ¶¶ 4-5, 9, and Ex. A.)  Clarendon denied coverage under the Second Policy,[1] but acknowledged that coverage under the First Policy would be determined under separate correspondence.  On August 6, 2006, Skanska filed a complaint in Virginia state court seeking indemnification from SCP for the damages claimed by UVA for the defective stair work.  (Compl., Ex. C.)  After SCP made additional requests for a defense, Clarendon indicated that it would not provide coverage under the First Policy, and that it had no duty to defend SCP in Skanska's lawsuit.  (Compl. ¶ 13.)  The state court action was settled in mediation (albeit

---

[1] Coverage was denied on two bases: (1) that SCP had knowledge of the potential loss in November 2003, prior to the effective date of the Second Policy; and (2) the construction defect which caused the damage first existed prior to the effective date of the Second Policy.  (Compl. ¶ 9 & Ex. B.)

without the participation of Clarendon, which had been notified of the mediation proceedings) and, on February 20, 2007, a final judgment was entered against SCP in the amount of $250,000.00  (Compl., Ex. F.)  SCP incurred an additional $29,986.05 in attorney's fees and costs in its defense of the state court action.  (Compl. ¶ 16.)

SCP brought the instant suit against Clarendon on April 30, 2007, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., seeking determinations that: (1) SCP was covered by Clarendon under the First Policy for the claims brought by Skanska against SCP in the underlying state court action; (2) Clarendon had a duty to defend SCP in said action; and (3) Clarendon breached this duty.  (Compl., *Ad Damnum*.)  As a result, SCP requests an order from the Court: (1) compelling Clarendon to comply with Virginia Code Ann. § 38.2-806 before asserting a defense in court; (2) entering judgment against Clarendon for monetary damages incurred in the defense and settlement of the underlying state court lawsuit; and (3) awarding SCP its attorney's fees incurred in connection with the prosecution of this action against Clarendon. (Id.)  Three of the four motions presently under consideration arise from Clarendon's failure to comply with Section 38.2-806 within the responsive pleading period.  The Court will first address SCP's Motion to Strike, in order to determine which of Clarendon's filings were appropriate and timely.

## II.  SCP'S MOTION TO STRIKE

On March 23, 2007, SCP alerted Clarendon of its intent to file suit against Clarendon in Virginia, and specifically directed its attention to Virginia Code § 38.2-806 that imposes limitations on insurance companies not licensed to do business within Virginia.  (Pl.'s Br. Supp. Mot. Strike ("Pl.'s Mot. Strike") Ex. B) (docket entry no. 11.)  Clarendon concedes that it is not

licensed to engage in insurance business in the Commonwealth, and that it must therefore comply with Section 38.2-806 before asserting a defense to SCP's lawsuit.  (Def.'s Special Appearance to Move for Postponement ("Def.'s Spec. App. Mem.") ¶ 2) (docket entry no. 6.) Indeed, before Clarendon may file "*any pleading* in any action, suit or proceeding instituted against it," it must either:

1.  Deposit cash or securities with the clerk of the court in which the action, suit or proceeding is pending, or file with the clerk a bond in an amount to be fixed by the court which shall be sufficient to secure the payment of any final judgment; or

2.  Procure a certificate of authority and a license to transact the business of insurance in this Commonwealth.

Va. Code Ann. § 38.2-806(A)(1)-(2) (emphasis added).  Without first complying with these statutory prerequisites, Clarendon filed, on May 31, 2007, a Motion to Postpone and Memorandum in Support (docket entry nos. 6 and 8), a Motion to Dismiss and Memorandum in Support pursuant to Fed. R. Civ. P. 12(b)(6) (docket entry nos. 7 and 9), and an Answer (docket entry no. 10).  SCP contends that each of Clarendon's filings constitutes an impermissible "pleading" that this Court must strike from the docket due to Clarendon's failure to first satisfy the dictates of Section 38.2-806(A).  (Pl.'s Mot. Strike at 1.)

However, before the Court may make such determinations, the Court must first ask whether Fed. R. Civ. P. 12(f) is the proper mode for attempting to strike Clarendon's aforementioned papers.  Pursuant to Rule 12(f), a motion may be made by a party, or by the court *sua sponte*, to have "stricken from *any pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (Emphasis added).  For the purposes of Rule 12(f), what constitutes a pleading must be determined with respect to Fed. R. Civ. P. 7(a).  An

-4-

answer is explicitly defined as a pleading, and therefore may be appropriately stricken pursuant to Rule 12(f).  On the other hand, a motion is not a pleading, and therefore "it is not proper under Fed. R. Civ. P. 12(f) to make a motion to strike a motion."  61A Am. Jur. 2d Pleading § 507 (2007); see also Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of the rule, only pleadings are subject to motions to strike.").  The Court will first address whether Clarendon's Answer, Motion to Dismiss, and Motion to Postpone are each considered "pleadings" for the purposes of Section 38.2-806(A).  If Clarendon's Answer is found to be an impermissible "pleading" under the statute, the Court may then have it stricken pursuant to Rule 12(f).  If Clarendon's motions are found to constitute impermissible "pleadings" under the statute, the disposition of said motions must be made pursuant to Section 38.2-806(A) and not Rule 12(f).

## 1.  Development of the "Outcome-Determinative Test"

The Court has diversity jurisdiction over the instant case pursuant to 28 U.S.C. § 1332 (2000).  Nearly seventy years ago, "the Supreme Court decided that in diversity cases federal courts must apply state substantive law, decisional as well as statutory, in the adjudication of state-created rights."  Szantay v. Beech Aircraft Corp., 349 F.2d 60, 63 (4th Cir. 1965) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).  But while "[f]ederal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, . . . it does not carry with it generation of rules of substantive law."  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 426 (1996).  The Court is therefore bound to apply state substantive law and federal procedural law.  Id. at 427.  Rather than relying on a traditional substantive-procedural distinction, the Court is obliged to follow the underlying purpose of Erie: to ensure that in cases

where a federal court possesses jurisdiction solely on the basis of diversity, "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."  Guar. Trust Co. v. York, 326 U.S. 99, 109 (1945); see also Ragan v. Merch. Transfer & Warehouse Co., 337 U.S. 530, 533 (1949) (when local law that creates the cause of action qualifies it, a "federal court must follow suit," for "a different measure of the cause of action in one court than in the other [would transgress] the principle of Erie").  This so-called "outcome-determinative" test does not operate mechanically to eliminate all variations between state court litigation and that of federal courts sitting in diversity, but instead a court must be "guided by the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Gasperini, 518 U.S. at 428 (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)).

    In announcing the "outcome-determinative" test, the Supreme Court in York held that in diversity cases a federal court cannot try a case barred by a state statute of limitations.  326 U.S. at 100.  Following this decision, the Court applied the "outcome-determinative" test to various situations in an effort to avoid state and federal courts from reaching different results.  For example, the Supreme Court has held that although Rule 3 of the Federal Rules of Civil Procedure states that "filing a complaint with the court" commences an action, such filing does not toll the local statute of limitations if the state rule requires service of the summons for tolling, see Ragan, 337 U.S. at 533-34; that if the state court is closed to a plaintiff who has not qualified to do business within the state, the federal court is likewise closed, see Woods v. Interstate Realty Co., 337 U.S. 535, 538 (1949); and that a state statute requiring a plaintiff in a derivative stockholder's action to post a bond for costs at the demand of the corporation must be followed,

although no such requirement is contained in Federal Rule of Civil Procedure 23, see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 555-56 (1949).  In light of these decisions, the question naturally arose whether there was any logical stopping point for the outcome-determinative test, for any difference in the method of administering justice might well be construed as "outcome-determinative."  See Hanna, 380 U.S. at 468 (noting that "*every* procedural variation is 'outcome-determinative'") (emphasis in original).

Accordingly, the Court began to look at the issue with a broader lense.  In Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525 (1958), the Court confronted the issue of whether a federal district court sitting in diversity was required to apply a South Carolina rule requiring the judge, rather than the jury, to decide factual issues relating to an employer's immunity under the state's Workmen's Compensation Act.  The Court noted that the "manner in which, in civil common-law actions, [the federal system] distributes trial functions between judge and jury" is a question governed solely by federal law.  Id. at 537.  Weighing "the federal policy favoring jury decisions of disputed fact questions" against the state's interest "of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court," id. at 538, the Court determined that "the likelihood of a different result is [not] so strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome," id. at 540.  Any hope of mitigating the outcome-determinative test, however, was dimmed by indications that the result in Byrd was reached "under the influence – if not the command – of the Seventh Amendment," id. at 537, and that the decision was largely limited to preserving those aspects of federal trial court procedures and practices essential to the integrity and economy of judicial administration in the federal

courts as a separate system. _See_ Russell J. Weintraub, Commentary on the Conflict of Laws §

10.3, at 699 (5th ed. 2006); _see also_ Simler v. Conner, 372 U.S. 221, 222 (1963) (supporting the

proposition that the right to a jury-trial must be determined according to federal law, due to the

"uniformity . . . which is demanded by the Seventh Amendment").

    Hanna strengthened the presumption in favor of applying the Federal Rules of Civil

Procedure when those rules conflicted with a state rule. Weintraub, _supra_, at 699. In that

diversity case, the plaintiff brought suit in federal court in Massachusetts against the estate of an

alleged tortfeasor. The plaintiff served the executor by leaving copies of the summons and

complaint with the executor's wife at his residence pursuant to then-Federal Rule of Civil

Procedure 4(d)(1) authorizing substituted service on an individual at his place of abode. The

defendant contended that the action could not be maintained because it was brought contrary to a

Massachusetts statute providing that such a defendant could only be "_served by the delivery in_

_hand upon such executor_ . . . ." Hanna, 380 U.S. at 462 (emphasis added) (quoting Mass. Gen.

Laws Ann., ch. 197, § 9 (1958)). The issue before the Court, therefore, was whether substituted

service under the Federal Rule was sufficient even though the Massachusetts statute demanded

in-hand service to commence the suit. The Supreme Court held that the manner of service of

process in a diversity action is governed by the Federal Rules, not state law, and noted that "[t]he

'outcome-determination' test . . . cannot be read without reference to the twin aims of the Erie

rule: discouragement of forum shopping and avoidance of inequitable administration of the

laws." Hanna, 380 U.S. at 468. "Availability of the federal method of service was not likely to

lead to forum shopping between the state and federal courts and did not result in unfair treatment

of the Massachusetts defendant." _See_ Weintraub, _supra_, at 700.

**2.  Va. Code Ann. § 38.2-806, Federal Rule of Civil Procedure 7, and Va. Sup. Ct. R. 3:8**

Clarendon, as the unlicensed insurer, must comply with Section 38.2-806 before it "files

or causes to be filed *any pleading* in any action, suit or proceeding instituted against it[.]"  Va.

Code Ann. § 38.2-806(A) (emphasis added).  The regulation of insurers is a subject generally left

to the states, and state statutes regulating foreign insurers are considered substantive law to be

applied in federal court.  See, e.g., T.P.K. Constr. Corp. v. S. Am. Ins. Corp., 739 F. Supp. 213,

214 (S.D.N.Y. 1990) (federal court sitting in diversity); see also Signal Capital Corp. v. E.

Marine Mgmt. Inc., 899 F. Supp. 1167, 1168 (S.D.N.Y. 1995) (federal court sitting in admiralty).

The problem in this case is determining whether Virginia law or federal law controls in

ascertaining which of Clarendon's previously filed papers constitute "pleadings" under the

statute.  The Virginia General Assembly explicitly utilized the word "pleading" in its creation of

Section 38.2-806, and under Virginia law, an answer, "demurrer, plea, *motion to dismiss*, and

motion for a bill of particulars *shall* each *be deemed a pleading* in response for the count or

counts addressed [in the complaint]."  Va. Sup. Ct. R. 3:8(a) (emphasis added).  In determining

legislative intent, it is presumed that the General Assembly is familiar with existing court rules

and case law when enacting particular statutes.  Waterman v. Halverson, 540 S.E.2d 867, 869

(Va. 2001); see also Charles v. Commonwealth, 613 S.E.2d 432, 434 (Va. 2005) (citing

Waterman for the same principle).  The Court also recognizes the ancient maxim that *verba sunt

indices imini* ("words are indications of the intention"), Black's Law Dictionary 1764 (8th ed.

2004), and as such, the intention of the General Assembly was expressed in its usage of the word

"pleading" in Section 38.2-806(A).  The General Assembly therefore presumably had knowledge

of the Virginia Supreme Court Rules' definition when it explicitly incorporated the word

"pleading" into Section 38.2-806.

Given such knowledge and express incorporation of the word "pleading," the Court finds that the Virginia General Assembly intended to define the word "pleading" in Section 38.2-806(A) in accordance with its own Virginia Supreme Court Rules definition, and not with respect definitions found elsewhere, such as that in Federal Rule of Civil Procedure 7(a). The duty of this Court, then, is to give effect to the intent of the General Assembly in its chosen language, and "[i]f the language is plain and unambiguous, . . . the language will be applied as written." Gillespie v. Commonwealth, 636 S.E.2d 430, 432 (Va. 2006) (citing Tiller v. Commonwealth, 69 S.E.2d 441, 442 (Va. 1952)). The Court finds the language of Section 38.2-806 to be plain and unambiguous in its usage and intended definition of the word, "pleading."[2]

However, the Court is also bound to apply the Federal Rules of Civil Procedure, and by contrast, the Federal Rules define a "pleading" quite differently than do the Rules of the Supreme Court of Virginia. Under Fed. R. Civ. P. 7(a), although Clarendon's Answer is deemed a responsive pleading, neither Clarendon's Rule 12(b)(6) Motion to Dismiss, nor the Motion to Postpone would constitute a pleading. See Fed. R. Civ. P. 7(a) (distinguishing between "motions and other papers" and "pleadings"); see also Mellon Bank, N.A. v. Ternisky, 999 F.2d 791,795 (4th Cir. 1993) (holding that a motion to dismiss is not a "pleading" under the Federal Rules); 61A Am. Jur. 2d Pleading § 392 (2007) ("Ordinarily a motion is not regarded as a responsive pleading.").

It is beyond dispute that if either Va. Sup. Ct. R. 3:8(a) or Fed. R. Civ. P. 7(a) is applied

---

[2] The Court's interpretation of the definition of "pleading" in Virginia Code § 38.2-806 is not binding in other state statutory or regulatory contexts, wherein the definition of "pleading" may be more appropriately defined with reference to explicit statutory provision or Virginia state court decisions.

to Virginia Code § 38.2-806, Clarendon's Answer *is* considered a pleading for the purposes of

Virginia Code § 38.2-806, and was not properly filed.  Therefore, Clarendon's Answer will be

stricken from the docket pursuant to Rule 12(f).  It is also beyond dispute that if either Va. Sup.

Ct. R. 3:8(a) or Fed. R. Civ. P. 7(a) is applied to Section 38.2-806, Clarendon's Motion to

Postpone *is not* considered a pleading for the purposes of the statute.  Clarendon's Motion to

Postpone therefore will not be stricken from the docket, and will be considered on the merits in

Part IV, <u>infra</u>.

The Court may not grant a motion to strike a motion, <u>Sidney-Vinstein v. A.H. Robins</u>

<u>Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983), and therefore the Court may not grant SCP's Rule 12(f)

Motion to Strike Clarendon's Motion to Dismiss.  Consequently, the Court denies SCP's Motion

to Strike Clarendon's Motion to Dismiss, and will treat the Motion to Strike as a response to the

Motion to Dismiss.  <u>See</u> <u>Fisherman's Harvest, Inc. v. United States</u>, 74 Fed. Cl. 681, 690 (Ct.

Fed. Cl. 2006) (denying motion to strike and treating arguments contained in a motion to strike

as a response to a motion to join parties and claims); <u>Sharpe v. MCI Telecomm. Corp.</u>, 19 F.

Supp. 2d 483, 487 (E.D.N.C. 1998) (finding motion to strike cross-motion for summary

judgment improper before construing it as a response to the motion).

SCP's Motion to Strike is GRANTED IN PART with respect to Clarendon's Answer and

DENIED IN PART with respect to Clarendon's Rule 12(b)(6) Motion to Dismiss, and

Clarendon's Motion to Postpone.  The Court must make an independent evaluation of the latter

motions.

### III.  CLARENDON'S MOTION TO DISMISS

The Court is left with the challenging issue of whether to apply Virginia law or the

Federal Rules of Civil Procedure to determine whether Clarendon's Motion to Dismiss constitutes an impermissible "pleading" under Section 38.2-806.[3]

The Supreme Court in <u>Hanna</u> articulated the applicable test for resolving conflicts between state law and the Federal Rules of Civil Procedure.  The first prong of the <u>Hanna</u> test asks "whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law, or implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law."  <u>Burlington N. R.R. Co. v. Woods</u>, 480 U.S. 1, 4-5 (1985) (citing <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 749-750 and n.9 (1980); <u>Hana</u>, 380 U.S. at 471-72); <u>see also</u> <u>Burke v. Smith</u>, 252 F.3d 1260, 1265-66 (11th Cir. 2001).

<u>Walker</u> provides guidance in determining whether there is such a conflict between Rule 7 and Virginia Code § 38.2-806.  In <u>Walker</u>, the plaintiff, a carpenter, brought suit against the defendant, a nail manufacturer, alleging negligence in the manufacture and design of a nail. Pursuant to Oklahoma law, the action was deemed to have commenced for the purposes of the statute of limitations with service of the summons upon defendant, whereas Federal Rule of Civil Procedure 3 states that the action is commenced upon filing of the complaint for all purposes. <u>Walker</u>, 446 U.S. at 742-43.  Thus, the issue before the Court focused on whether a state statute of limitations was satisfied by the mere filing of the complaint with the court (pursuant to Fed. R. Civ. P. 3), or rather by service of the complaint on the defendant (pursuant to the Oklahoma statute).  In determining the scope of the Federal Rule, the Supreme Court found there was "no indication that [Rule 3] was intended to toll a state statute of limitations, much less that it

---

[3] Though the need to answer the question of what constitutes a "pleading" is evident even upon a cursory reading of Virginia Code § 38.2-806, neither counsel for SCP nor that for Clarendon developed such an argument, or addressed the question by motion or in oral argument.

purported to displace state tolling rules for purposes of state statutes of limitations." Id. at 750-51. The Supreme Court looked to the corresponding Notes of the Advisory Committee on Rules of Practice and Procedure in making this determination. Id. at 750 n.10. The Court concluded that "[i]n our view, Rule 3 governs the date from which various timing requirements of the federal rules begin to run, but does not affect state statute of limitations." Id. at 751. Rule 3, therefore, was not applicable. The Fourth Circuit articulated these principles in a slightly different manner, stating that "[b]ecause a 'direct conflict between the Federal Rule and the state law' cannot exist 'in the absence of a federal rule *directly on point*,' the Hanna rule cannot apply." Wade v. Danek Med., Inc., 182 F.3d 281, 290 (4th Cir. 1999)[4]  (emphasis added) (quoting Walker, 446 U.S. at 750-751 & n.9).

Guided by the above principles and the Supreme Court's analysis with respect to whether Rule 3 is broad enough in scope to directly conflict with a state substantive law, the Court concludes that Rule 7 does not directly collide with the definition of "pleading" as promulgated in Va. Sup. Ct. R. 3:8(a) and incorporated into Virginia Code § 38.2-806. There is no indication in the Notes of the Advisory Committee that Rule 7 was intended to aid in the interpretation of the definitions of "pleadings" or "motions" as incorporated into state substantive law, much less to directly displace such definitions. Instead, in diversity actions, Rule 7 governs the definition and form of "pleadings" and "motions" for the purposes of the Federal Rules of Civil Procedure as well as broader matters of federal civil practice and procedure. See Fed. R. Civ. P. 1 ("These rules govern the procedure in the United States district courts in all suits of a civil nature whether

---

[4] The Wade court found, in the context of determining whether Federal Rule 23 (governing class actions) *implicitly* contained an equitable tolling rule that would directly conflict with a Virginia rule to the contrary, that there could be no direct conflict because the federal rule was not *directly on point*. 182 F.3d at 290.

cognizable as cases at law or in equity or in admiralty[.]").  Furthermore, the decision by the

General Assembly as to which documents an unlicensed insurance company would be precluded

from filing until it complies with Section 38.2-806 is, in effect, a policy decision.  As the <u>Walker</u>

court found that "Rule 3 does not replace such policy determinations found in state law," 446

U.S. at 752, so too with Rule 7 and the policy determinations of the Virginia General Assembly.

For these reasons, the Court concludes that Rule 7 does not directly conflict with the definition

of "pleading" as promulgated in Va. Sup. Ct. R. 3:8(a) and incorporated into Virginia Code §

38.2-806.

Pursuant to the test set forth in <u>Wade</u>, even if Rule 7 conflicts with the definition of

"pleading" as incorporated in Section 38.2-806, there is no analogous federal rule *directly on*

*point* that conflicts with the statute as a whole.  The quintessential example of a federal rule

determined to be *directly on point* with a state statute was in <u>Hanna</u>, wherein then-Rule 4(d)(1)

(allowing for service to be effectuated by "leaving copies [of the complaint and summons] at [the

defendant's] dwelling house or usual place of abode with some person of suitable age and

discretion then residing therein . . . .") was found to conflict with the relevant Massachusetts

statute (which did not permit such a method of service).  <u>Hanna</u>, 380 U.S. at 465.  The

application of the Federal Rule would allow for service to be effectuated in a method not

permitted by the Massachusetts statute, while the application of the Massachusetts statute would

render ineffective a provision of the Federal Rule.  This scenario in <u>Hanna</u> would satisfy the

stringent criteria set forth in <u>Walker</u> and <u>Wade</u> to decide what constitutes a direct conflict, aptly

characterized as an "impossibility approach."  <u>See</u> Eugene F. Scoles et al., <u>Conflict of Laws</u> 186

(4th ed. 2004) (stating that a federal rule conflicts "only if it were impossible to apply both it and

the state rule").

However, such a zero-sum situation is not presented to the Court with respect to Rule 7 and Virginia Code § 38.2-806.  In <u>Hanna</u> the purposes of the Massachusetts statute and the purposes of then-Rule 4(d)(1) were identical: to provide the appropriate manner or manners in which one can effectuate service upon a civil defendant.  The underlying purposes of Rule 7 and Section 38.2-806, on the other hand, not only lack such an identical purpose but are clearly unrelated.  The former was promulgated specifically to delineate the various types of papers, pleadings, and motions permitted in civil actions before a federal district court, in the interests of, *inter alia*, establishing a uniform code of civil procedure for the federal courts to "secure the just, speedy, and inexpensive determination of every action[.]" Fed. R. Civ. P. 1.  Section 38.2-806 was promulgated by the Virginia General Assembly in the interests of assisting an insured to bring suit and secure judgment against an out-of-state insurance company.  The Court contrasts the purposes of Rule 7 with Virginia Code § 38.2-806 as opposed to Va. Sup. Ct. R. 3:8(a), because the Virginia Rule is only applicable to the instant suit insofar as it is incorporated into this substantive Virginia statute.  To compare Rule 7 with the definition of a single word within Virginia Code § 38.2-806 would, *ipso facto*, violate the requirement set forth in <u>Wade</u> that there be a federal rule *directly on point*.

Having concluded under the first prong of the <u>Hanna</u> test that there is no direct conflict between Federal Rule 7 and the definition of "pleading" promulgated in Va. Sup. Ct. R. 3:8(a) and incorporated into Virginia Code § 38.2-806, and furthermore that there is no direct conflict between Rule 7 and Virginia Code § 38.2-806 as a whole, the Court need not address the second question of the <u>Hanna</u> analysis: whether Rule 7 is outside the scope of the Rules Enabling Act or

beyond the power of Congress under the Constitution.  Walker, 446 U.S. at 752 n.14.

Accordingly, the Court must look to the underlying aims of Erie to determine whether in the absence of a direct conflict with a federal rule, the definition of "pleading" promulgated in Virginia Rule 3:8(a) and incorporated into Virginia Code § 38.2-806 is controlling.  With regard to the first objective of Erie, "discouragement of forum shopping," Hanna, 380 U.S. at 468, the aim would be subverted if the Court found the definition of "pleading" incorporated in Virginia Code § 38.2-806 not to be controlling.  If such were the case, a plaintiff suing an insurance company unlicensed in Virginia would have a strong incentive to file suit in state court, as the insurance company would not be able to file a demurrer or an equivalent state court motion to dismiss before complying with Section 38.2-806.  On the other hand, there would be a strong incentive for the unlicensed insurance company to remove the action to federal court, if possible, as it would then be permitted to file a Rule 12(b)(6) Motion to Dismiss before complying with the provisions of said statute.  With regard to the second aim of Erie, to prevent "inequitable administration of the laws," id., the policies underlying diversity jurisdiction do not support permitting a defendant in federal court a means to defend itself which would be expressly disallowed to a defendant similarly situated in state court.  Both underlying aims of Erie support the Court's decision to find the definition of "pleading" promulgated in Va. Sup. Ct. R. 3:8(a) and incorporated into Virginia Code § 38.2-806 to be controlling.  This definition, as well as the Rule 7 definition of "pleading" certainly "can exist side by side, therefore, *each controlling its own intended sphere of coverage without conflict*."  Walker, 446 U.S. at 752 (emphasis added).

For purposes of diversity jurisdiction a federal court is, "in effect, only another court of the State[.]" York, 326 U.S. at 108.  "[C]ases following Erie have evinced a broader policy to the

effect that the federal courts should conform as near as may be – in the absence of other considerations – to state rules even of form and mode where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule." Byrd, 356 U.S. at 536-37.  Clarendon's Rule 12(b)(6) Motion to Dismiss is considered a "pleading" for the purposes of Virginia Code § 38.2-806(A) and therefore Clarendon is precluded from filing such motion at this time**.**  Therefore, pursuant to Virginia Code § 38.2-806(A), Clarendon's Motion to Dismiss is DENIED as premature, but with leave to refile upon compliance with said statute.  Because Clarendon's Motion to Dismiss was improperly filed, the Court need not consider the other alleged grounds for dismissal at this time.

### IV.  CLARENDON'S MOTION TO POSTPONE

As previously noted, before Clarendon may file any pleading, it must first (1) deposit cash or post a bond sufficient to satisfy judgment of any final payment, or (2) procure a license to transact insurance business in this Commonwealth.  On May 31, 2007, the last day to file a responsive pleading in this action, Clarendon specially appeared and moved the Court to postpone the instant suit so as to be able to comply with § 38.2-806(A). (Def.'s Mot. Postpone at 2.)

The Motion to Postpone was made "before the expiration of the period originally prescribed," which was the period to file a responsive pleading to the complaint, and therefore, albeit at the proverbial eleventh hour and fifty-ninth minute, the court may in its discretion enlarge the period to respond for "cause shown."  Fed. R. Civ. P. 6(b).  "An application under Rule 6(b)(1) normally will be granted in the absence of bad faith or prejudice to the adverse

party." Koehler v. Dodwell, No. 99-1776, 2000 WL 709578, at *3 (4th Cir. June 2, 2000)

(unpublished) (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1165, at 475 (2d ed. 1987)).  Moreover, Virginia Code § 38.2-806(B) specifically

provides that the Court may, in its discretion, "order a postponement" in order "to afford the

unlicensed insurer reasonable opportunity to comply with the provisions of subsection A[,]" *i.e.*,

to post a bond or procure a license to transact insurance business in Virginia.

Clarendon does not invoke Rule 6(b) for a fixed extension of time, instead, seeking to

postpone the matter for an *unspecified* duration.  It is undisputed that since March 23, 2007,

Clarendon has had notice of the particular requirements of Section 38.2-806 in multiple ways,

including in a letter sent by SCP's counsel.  (Compl. Ex. G)  Clarendon has been cognizant of

the requirements of Section 38.2-806 for almost four months, and moreover has failed to explain

or justify its refusal to comply with the statute's prerequisites.  Furthermore, SCP has incurred

significant expense in filing its Motion to Strike and Motion for Default Judgment, both based on

the Clarendon's failure to comply with Section 38.2-806.

 It is clear that Clarendon had ample time in which to comply with the statute; however,

the Court's preference is for trial to proceed on the merits, see Augusta Fiberglass Coatings Inc.,

v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988), and that weighs heavily in favor

of granting Clarendon a *brief* extension of time in which to comply with Section 38.2-806(A)(1)

and post a bond in an amount fixed by the Court.  Moreover, Clarendon attempted to file, albeit

improperly, an Answer and a Rule 12(b)(6) Motion to Dismiss within the responsive pleading

period, and as such, the Court cannot conclude that Clarendon's actions necessarily rise to the

level of bad faith.[5]

For the foregoing reasons, Clarendon's Motion to Postpone will be construed as a Motion for Extension of Time pursuant to Rule 6(b) and it is hereby GRANTED, extending to Clarendon seven (7) business days from the issuance of this Memorandum Opinion and accompanying Order to comply with Virginia Code § 38.2-806, and to file a responsive pleading to the Complaint. If Clarendon elects to comply with Virginia Code § 38.2-806(A)(1), the court fixes bond at $325,000, a sum deemed appropriate given the alleged indebtedness and projected fees and expenses should SCP prevail.

## V.  SCP'S MOTION FOR DEFAULT JUDGMENT

SCP has also filed a Motion for Default Judgment due to Clarendon's failure to make "any competent responsive pleadings to the Complaint, despite proper service of process upon the defendant and despite the fact that Defendant's counsel was sent a courtesy copy of the Complaint on April 14, 2007" within 20 days of service. (Pl.'s Mot. Default J. at 2.)  However, as of the date of entry of this order, SCP has not initially sought entry of default against Clarendon as required by Federal Rule of Civil Procedure 55(a).

"Before the plaintiff can move for default judgment, the clerk or the court must enter default." Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06cv264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").  In

---

[5] The Court does not, therefore, conclude that an award of attorney's fees and costs would be appropriate, even though no request has been made for same.

Section IV, <u>supra</u>, the Court granted Clarendon seven (7) business days from the date of the issuance of this order with which to comply with the provisions of Virginia Code § 38.2-806 and to file a responsive pleading.  If Clarendon, after the expiration of such extension, fails in either respect, SCP may then seek an entry of default.  SCP's Motion for Default Judgment is therefore DENIED as premature.

   An appropriate Order shall issue.


        _____/s/_____
         Dennis W. Dohnal, U.S. Magistrate Judge

Dated: 7/27/07
Richmond, Va.