**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| **STRUCTURAL CONCRETE PRODUCTS, LLC,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>     v. ) <br> ) <br> **CLARENDON AMERICA INSURANCE COMPANY,** ) <br> ) <br>     **Defendant.** ) <br> ) <br> ) | **CIVIL NO. 3:07CV253** |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties on the Defendant, Clarendon America Insurance Company's ("Clarendon"), Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Memorandum in support thereof (docket entry nos. 25 and 26). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process. For the reasons set forth herein, Clarendon's motion will be DENIED.

### I. BACKGROUND AND PROCEDURAL HISTORY

The Court repeats the relevant history of the situation as set forth in its earlier Memorandum Opinion of July 27, 2007 (docket entry no. 21) for ease of reference.

SCP is a Virginia limited liability company in the business of "manufacturing, supplying and erecting . . . concrete components for construction projects in Virginia and elsewhere." (Compl. ¶ 2.) In February 2000, Skanska USA Building, Inc. ("Skanska") entered into an agreement with the University of Virginia ("UVA") to construct concrete stairs and railings on

the outside of the Lambeth Field student housing apartments. (Compl. ¶ 6.) Skanska subcontracted part of the concrete stairs work to SCP. (Compl. ¶ 7.) At some point after the project's completion, UVA complained that the stairs were defective and demanded that Skanska take corrective action. Thereafter, Skanska demanded that SCP repair the damaged stairs and indicated that if SCP refused to do so, "Skanska would hold [SCP] responsible for the cost of the corrective action demanded by UVA." (Compl. ¶ 7.)

In August 2004, SCP notified Clarendon (a Delaware corporation) of Skanska's potential claim. (Compl. ¶ 8.) SCP alleges that it was covered under two separate insurance policies provided by Clarendon: HML0003447 (the "First Policy"), effective from August 5, 2003 to August 5, 2004; and HML0005530 (the "Second Policy"), effective from August 5, 2004 to August 5, 2005. (See Compl. ¶¶ 4-5, 9, and Ex. A.) In a letter dated November 17, 2004, Clarendon denied coverage under the Second Policy,[1] but acknowledged that coverage under the First Policy would be determined under separate correspondence. (Compl., Ex. B.) On August 6, 2006, Skanska filed a complaint in Virginia state court seeking indemnification from SCP for the damages claimed by UVA for the defective stair work (the "Skanska lawsuit"). (Compl., Ex. C.) After SCP made additional requests for a defense, Clarendon indicated that it would not provide coverage under the First Policy, and that it had no duty to defend SCP in Skanska's lawsuit. (Compl. ¶ 13.) The state court action was settled in mediation (albeit without the participation of Clarendon, which had been notified of the mediation proceedings) and, on February 20, 2007, a final judgment was entered against SCP in the amount of $250,000.00

---

[1] Coverage was denied on two bases: (1) that SCP had knowledge of the potential loss in November 2003, prior to the effective date of the Second Policy; and (2) the construction defect which caused the damage first existed prior to the effective date of the Second Policy. (Compl. ¶ 9 & Ex. B.)

(Compl., Ex. F.) SCP incurred an additional $29,986.05 in attorney's fees and costs in its defense of the state court action. (Compl. ¶ 16.)

SCP brought the instant suit against Clarendon on April 30, 2007, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, seeking determinations that: (1) SCP was covered by Clarendon under the First Policy for the claims brought by Skanska against SCP in the underlying state court action; (2) Clarendon had a duty to defend SCP in said action; and (3) Clarendon breached this duty. (Compl., *Ad Damnum*.) Accordingly, SCP seeks $279,986.05 in damages arising from its defense of the underlying Skanska lawsuit (part of which includes attorney's fees incurred in that action), as well as attorney's fees arising out of the present suit. (See id.; see also Compl. ¶ 16.)

On May 31, 2007, Clarendon attempted to defend itself by filing, *inter alia*, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and an Answer. (Docket entry nos. 7 and 9.) As an unlicensed insurer, however, Virginia law required Clarendon to satisfy one of the following criteria before filing a "pleading" in "any action, suit or proceeding instituted against it": (1) deposit cash or securities with the Clerk or post a bond sufficient to secure the payment of any final judgment; or (2) procure a certificate of authority and a license to transact insurance business in the Commonwealth. Va. Code Ann. § 38.2-806(A). As Clarendon had not complied with either prerequisite, the Court concluded that both the motion to dismiss and answer were premature and improperly filed. Pursuant to the discretion vested in this Court by Section 38.2-806(B), this Court granted Clarendon additional time to satisfy the procedural mandates applicable to unlicensed insurers. (See docket entry no. 22.) Accordingly, on August 7, 2007, Clarendon posted a bond in the amount of $325,000, and re-filed its motion to dismiss. (Docket

entry nos. 24 and 25.) The motion is now ripe for disposition on the merits.

Clarendon raises two arguments in support of its motion to dismiss, both of which address SCP's claim for attorney's fees. First, Clarendon claims that "under Virginia Code § 38.2-209 [SCP] cannot properly plead [Clarendon's] bad faith until a judgment has been entered against [Clarendon]." (Def.'s Mem. at 4.) Second, Clarendon contends that SCP has not pled facts sufficient to state a claim that Clarendon's denial of coverage was vexatious, without reasonable cause, or was otherwise made in bad faith such that an award of attorney's fees under either Virginia Code §§ 38.2-209 or -807 would be improper. (Id. at 3.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. For the last fifty years, federal courts around the country have universally cited Conley v. Gibson, 355 U.S. 41, 45-46 (1957), for the proposition that in order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. But the Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the "no set of facts" language from Conley had "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007). Notwithstanding this pronouncement from the Supreme Court, neither party cited the Bell Atlantic decision in its brief respecting Clarendon's motion to dismiss; neither party addressed the potential impact of Bell Atlantic on the Court's standard of review when evaluating such motions on the merits; nor did either party even mention whether Conley remains good law. Indeed, Clarendon, the movant,

made no mention of the standard of review whatsoever in its brief, and SCP favorably cited the "no set of facts" language even though the Supreme Court stated in <u>Bell Atlantic</u> that such words had "earned [their] retirement." (<u>See</u> Pl.'s Mem. Opp'n at 2.)

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic</u>, 127 S. Ct. at 1964 (internal quotation marks omitted). The complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Id.</u> at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. The Court will therefore assume all well-pled allegations in the Complaint are true, and will draw all reasonable inferences in favor of the Plaintiff, SCP. <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 346 (4th Cir. 2005).

### III. ANALYSIS

**1. SCP's Claim for Attorney's Fees is Not Premature**

Clarendon contends that SCP's claim for attorney's fees lacks merit at this juncture of the proceedings because, pursuant to Va. Code Ann. § 38.2-209, SCP "cannot properly plead [Clarendon's] bad faith until a judgment has been entered against [Clarendon]." (Def.'s Mem. at 4.)[2] Section 38.2-209 reads, in pertinent part, as follows:

> . . . in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and

---

[2] Clarendon does not challenge the timeliness of a claim for attorney's fees made pursuant to Va. Code § 38.2-807.

> such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

Va. Code Ann. § 38.2-209(A). In support of its argument that SCP's claim for attorney's fees is premature, Clarendon cites to Cradle v. Monumental Life Ins. Co., 354 F. Supp. 2d 632 (E.D. Va. 2005), wherein the court stated that a "claim under § 38.2-209 may only be brought once a judgment is entered against the Defendant." Id. at 636; see id. at 637 (noting that the court "may not even consider the question of the insurer's bad faith nor may Plaintiff properly plead bad faith until a judgment has been entered against Defendant."). The court in Cradle relied on a decision from the Arlington County, Virginia Circuit Court – U.S. Airways, Inc. v. Commonwealth Ins. Co., 64 Va. Cir. 408 (Va. Cir. Ct. 2004) – which held that a judgment against an insurer acts as a "condition precedent" to a bad faith claim. Id. at 420. However, several subsequent cases have either disagreed with the court's holding in Cradle, or refused to apply the U.S. Airways rule that a judgment against a defendant insurance company is a "condition precedent" to a bad faith claim.[3]

In a recent case with substantially similar facts, the United States District Court for the Western District of Virginia noted the that the "U.S. Airways [decision] creates a troubling paradox as to how and when a petitioner must raise the issue of fees and costs under [Section 38.2-209]." Styles v. Liberty Mut. Fire Ins. Co., No. 7:06CV311, 2006 U.S. Dist. LEXIS 49294, at *5 (W.D. Va. July 7, 2006) (Turk, S.J.). First, an insured's fee request could not be filed in a

---

[3] Cradle considered the award of costs and attorney's fees only as it pertained to satisfying the amount in controversy requirements for purposes of diversity jurisdiction in federal court. 354 F. Supp. 2d at 636-37.

subsequent civil action because "a request under Section 38.2-209 is not a separate cause of action that can be independently brought." Id. (citing Salomon v. Transamerica Occidental Life Ins. Co., 801 F.2d 659, 661 (4th Cir. 1986) (applying the predecessor Virginia attorney fees statute, Va. Code § 38.1-32.1)).  Second, if U.S. Airways presumably requires a plaintiff to claim attorney's fees under § 38.2-209 for the first time in a suit on a judgment, the plaintiff would then face the risk of the court finding the fees claim barred due to prejudice suffered by the defendant because of a lack of notice and inequitable increase in the defendant's ultimate liability.  Styles, 2006 U.S. Dist. LEXIS 49294, at *5-6 (citing, in addition to various Virginia state court decisions, Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 716 n.4 (4th Cir. 1983) (a petitioner's failure to specifically state a claim for fees in the complaint bars such relief)); see also Fed. R. Civ. P. 9(g) ("When items of special damage are claimed, they shall be specifically stated.").

Furthermore, the court in Styles found the U.S. Airways precedent to be unpersuasive where it is contrary to the plain language of § 38.2-209, and because no Virginia Supreme Court opinion ever supported its conclusion that a judgment against a defendant is a "condition precedent" to a claim for attorneys' fees.  Styles, 2006 U.S. Dist. LEXIS 49294, at *5-11; see id. at *5 ("No Virginia Supreme Court opinion has held" that a claim for attorney's fees must be dismissed "until after a judgment on the breach of contract issue is decided.").  Indeed,

> [t]he plain language of [Section 38.2-209] makes clear that the fee request be brought within the same suit as the substantive claim.  The statute states that in any civil action where there is a coverage dispute, the insured can recover fees and costs if the insurer acted in bad faith.  Similar to any civil action in which costs or other fees are demanded, the request is entertained by the court only after the substantive cause of action is adjudicated.  A request for fees or costs is not set out in a subsequent separate civil action but in the same matter from which it arises.  Such a request must be made in

>   the complaint, although it is not considered until the denouement of the case.

Id. at *6-7 (internal citation omitted). Subsequent cases in this district have engaged in an analysis of a defendant insurance company's bad faith concurrently with the issue of liability and before a judgment had been entered against the defendant. See, e.g., Berenguer, M.D. v. Lincoln Nat'l Life Ins. Co., No. 2:06cv190, 2006 U.S. Dist. LEXIS 83172, at *59 (E.D. Va. Nov. 15, 2006) (Doumar, J.) (denying attorneys' fees under Virginia Code § 38.2-209 upon judgment from a bench trial for failure to satisfy the bad faith criteria set forth in CUNA Mut. Ins. Soc'y v. Norman, 375 S.E.2d 724, 726-727 (Va. 1989)); Mayton v. Auto-Owners Ins. Co., No. Civ.A.3:05CV667, 2006 U.S. Dist. LEXIS 28952, at *18-19 (E.D. Va. May 2, 2006) (Spencer, C.J.) (denying attorneys' fees under Virginia Code § 38.2-209 on a motion for summary judgment for failure to satisfy the bad faith criteria set forth in CUNA).

Due to the apparent contradiction of the holding of the trial court in U.S. Airways with the plain language of Virginia Code § 38.2-209; the fact that the Virginia Supreme Court has never held that judgment against a defendant insurance company is a "condition precedent" to a claim for attorneys' fees; the express criticism of such a rule in Styles; and the failure to apply such a rule in Berenguer and Mayton, Clarendon's argument that SCP's claim for attorneys' fees is barred without first obtaining a judgment against Clarendon is unpersuasive to this Court.

**2. The Facts Alleged in the Complaint Adequately State a Claim for Attorney's Fees**

    **A. Va. Code § 38.2-209**

Clarendon also contends that SCP has failed to plead facts sufficient to state a claim for attorney's fees under Virginia law. (Def.'s Mem. at 1-4.) SCP seeks attorney's fees incurred in the underlying Skanska lawsuit, as well as those derived from the filing of the instant litigation.

Pursuant to Va. Code § 38.2-209, an insured may be entitled to an award of attorney's fees in an insurance coverage dispute if the court determines that the insurer denied the disputed claim in bad faith. In evaluating the conduct of an insurer under Section 38.2-209, the Supreme Court of Virginia has explained that the proper standard is one of reasonableness. CUNA Mut. Ins. Soc'y v. Norman, 375 S.E.2d 724, 726-27 (Va. 1989). Indeed, the Court has stated that a bad faith claim under Section 38.2-209

> generally would require consideration of such questions as [1] whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; [2] whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; [3] whether the evidence discovered reasonably supports a denial of liability; [4] whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and [5] whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

CUNA, 375 S.E.2d at 727. Although Clarendon contends that SCP's complaint "merely outlines the circumstances surrounding defendant's denial of coverage to" SCP (Def.'s Mem. at 3), the specific facts alleged, if true, would permit this Court to conclude that Clarendon acted in bad faith by denying coverage in the Skanska lawsuit.

SCP has asserted that it was covered by an insurance policy with Clarendon, that SCP caused "property damage" covered by the policy within the coverage period, and that Clarendon had a duty to defend SCP in the underlying Skanska lawsuit. (Compl. ¶¶ 4-5, 13.) Even though Clarendon indicated by correspondence of November 17, 2004, that it would make a determination "under separate correspondence" as to whether SCP was entitled to coverage, the decision formally denying coverage or a defense was not made until December 15, 2006, more than four months after the Skanska lawsuit was filed. (Compl. ¶¶ 10-12 & Exs. D, E.)

Moreover, the Skanska lawsuit resulted in a Final and Consent Judgment Order where the state court concluded that: (1) there was an occurrence resulting in property damage to the UVA property on which SCP had worked; (2) the property damage occurred during the coverage period of the policy; (3) SCP was liable for the property damage that occurred during the coverage period; (4) and the property damage had a value of at least $250,000.  (Compl. ¶ 15 and Ex. F.)  Clarendon was also given ample notice of the parties' attempt to mediate the dispute, and yet refused participation.  The state court judgment may impact on the issue of whether Clarendon's refusal to provide a defense was made in bad faith, for Virginia law holds that an insurer may not collaterally attack a judgment previously entered upon stipulation, even when the insurer was not a party to the stipulation and did not participate in the agreement "in any way."  See Liberty Mut. Ins. Co. v. Eades, 448 S.E.2d 631, 633 (Va. 1994); see id. ("The law is settled that whenever a judgment has been recovered against a party who clearly qualifies within the provisions of such a policy as an insured, then the liability of the insurer is definitely fixed . . . .").

   Finally, and perhaps most obviously, Clarendon could have defended SCP under a reservation of rights, but it chose not to do so, and this fact may also come to bear on the Court's bad faith analysis.  Cf. Carolina Cas. Ins. Co. v. Draper & Goldberg, PLLC, 369 F. Supp. 2d 667, 674 (E.D. Va. 2004) ("[T]he fact that Carolina provided a defense under a reservation of rights indicates that Carolina *did* act in good faith" such that a denial of the insured's claim for attorney's fees pursuant to Va. Code § 38.2-209 was proper) (emphasis added).  Considering the allegations as a whole, the Court could reasonably conclude that Clarendon acted in bad faith in denying coverage in the underlying lawsuit, and SCP should therefore be afforded the

opportunity through the discovery process to demonstrate whether any or all of the five CUNA factors can be satisfied in support of an award of attorney's fees. It is also noted that disposition of a claim for attorney's fees and costs under Section 38.2-209 for failure to prove bad faith is appropriate upon review of a final judgment after trial, CUNA, 375 S.E.2d at 727, or upon motion for summary judgment, see, e.g., HHC Assocs. v. Assurance Co. of Am., 256 F. Supp. 2d 505 (E.D. Va. 2003); Rush v. Hartford Mut. Ins. Co., 652 F. Supp. 1432 (W.D. Va. 1987) (denying plaintiff attorney's fees upon motion for summary judgment when no evidence was put forward to prove insurer's bad faith).

### B. Va. Code § 38.2-807

SCP also bases its claim for attorney's fees on the provisions of Va. Code § 38.2-807. That statute provides, in pertinent part:

> A. In *any action against an unlicensed insurer upon an insurance contract* issued or delivered in this Commonwealth . . . to a corporation authorized to do business in this Commonwealth, the court may allow the plaintiff a reasonable attorney fee if (i) the insurer has failed to make payment in accordance with the terms of the contract for thirty days after demand prior to the commencement of the action and (ii) the court concludes that the refusal was *vexatious and without reasonable cause*. . . . .
>
> B. Failure of the insurer to defend *the action* shall be deemed prima facie evidence that its failure to make payment was vexatious and without reasonable cause.

Va. Code § 38.2-807 (emphasis added). There is no dispute that SCP "has failed to make payment" on SCP's claim. Rather, Clarendon contends that SCP "has failed to allege any facts that demonstrate that [Clarendon's] denial of coverage to [SCP] was vexatious and without reasonable cause." (Def.'s Mem. at 3.) No court has yet had the opportunity to interpret Section 38.2-807, but where the language of the statute is unambiguous, this Court is bound by the plain

meaning of that language. Budd v. Punyanitya, 643 S.E.2d 180, 184 (Va. 2007) (citations omitted). "Vexatious" refers to, *inter alia*, conduct that is "without reasonable or probable cause or excuse." Black's Law Dictionary 1596 (8th ed. 2004). Here, as was the case with the claim for attorney's fees pursuant to Va. Code § 38.2-209, SCP's Complaint, as previously discussed, adequately asserts facts that, if true, would permit the Court to conclude that Clarendon's refusal of coverage was "vexatious and without reasonable cause" pursuant to Va. Code § 38.2-807(A).

Finally, SCP contends that because Clarendon refused to provide a defense to SCP, and since Clarendon was an unlicensed insurer at the time of the refusal, SCP's Complaint states a *prima facie* claim for attorney's fees under Section 38.2-807(B). Unlike Section 38.2-209, Section 38.2-807(B) specifically provides as follows: "Failure of the insurer to defend *the action* shall be deemed prima facie evidence that its failure to make payment was vexatious and without reasonable cause." (Emphasis added). Subsection (B)'s *prima facie* entitlement, however, is inapplicable to the present suit. Read in isolation, Subsection (B) could be considered ambiguous, for it is unclear to which "action" the statutory text (and *prima facie* entitlement) refers. It could potentially refer to the failure of the insurer to defend the insured in an underlying lawsuit (between the insured and a third-party claiming fault), or it could likewise refer to the unlicensed insurer's failure to defend itself against the lawsuit initiated by the insured on the insurance contract. But Section 38.2-807(B) cannot be read in isolation, and must instead be read in conjunction with Section 38.2-807(A). See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000) (noting that statutory provisions should not be read in isolation because the meaning of certain words or phrases may only become evident when placed in context). When read together, it is clear that "the action" referred to in subsection (B) is that

of an insured "*against an unlicensed insurer* upon an insurance contract issued or delivered" in Virginia to a Virginia resident or "corporation authorized to do business in" Virginia. Va. Code. § 38.2-807(A) (emphasis added). Section 38.2-807(B) thus applies to those situations where an unlicensed insurer has failed to defend an action brought by an insured upon an insurance contract issued or delivered in Virginia. As Clarendon is properly defending itself in the instant lawsuit, SCP is therefore not entitled to a *prima facie* presumption that Clarendon's failure to make payment in the underlying lawsuit was "vexatious and without reasonable cause."[4]

Even though SCP's allegations cannot be construed as *prima facie* evidence that Clarendon's failure to cover SCP for its losses incurred in the Skanska lawsuit was "vexatious and without reasonable cause" pursuant to Section 38.2-807(B), the facts alleged in the Complaint nonetheless raise a claim for attorney's fees pursuant Va. Code § 38.2-807(A) "above the speculative level." Bell Atlantic, 127 S. Ct. at 1965.

## IV.  CONCLUSION

For all of these reasons, Clarendon's motion to dismiss must be DENIED.

An appropriate order shall issue.

---

[4] The *prima facie* evidentiary standard would apply if, for example, Clarendon had failed to post the required bond and was thereby found to be in default for its failure to defend *in this case*. To read the statute otherwise would entitle an insured to a *prima facie* claim for attorney's fees any time an unlicensed insurer refused to provide a defense to the insured, no matter how reasonable or justified that refusal may have been.

                                                                     _____/s/_____
                                                              Dennis W. Dohnal, U.S. Magistrate Judge

Date: 8/22/07